IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY W. CHAPPELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-370-GMB |
| | ) | [WO] |
| CITY OF CLANTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the Motions to Dismiss filed by Defendants Keith Maddox and the City of Clanton (the "City") (Doc. 26), John Shearon (Doc. 37), and Jessica Mims and Jason Reeves (Doc. 38). The court is also considering the Motion to Strike Fictitious Parties filed by Maddox and the City of Clanton. Doc. 27. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Docs. 52–55. After careful consideration of the parties' submissions and the relevant law, it is ORDERED that:

1.  City of Clanton and Maddox's Motion to Dismiss (Doc. 26) is GRANTED;

2.  Shearon's Motion to Dismiss (Doc. 37) is GRANTED;

3.  Mims and Reeves' Partial Motion to Dismiss (Doc. 38) is GRANTED; and

4.  City of Clanton and Maddox's Motion to Strike Fictitious Parties (Doc. 27) is GRANTED.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this lawsuit pursuant to

28 U.S.C. §§ 1331 and 1367. The defendants do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. FACTUAL BACKGROUND

This lawsuit arises out of a shooting incident on June 17, 2015, in Chilton County, Alabama. Wendy Chappell Price was driving southbound on Interstate 65 in Shelby County, Alabama, when she was pursued by Alabama state trooper Adam Ezekiel for failing to stop at his order. Doc. 1 at 10. Wendy's husband, Adam Price, had informed Ezekiel that Wendy had two unloaded firearms in her vehicle. Doc. 1 at 10. After coordination between the Alabaster Police Department, Chilton County Sheriff's Department, and Clanton Police Department, officers successfully stopped Price's vehicle between the hours of 8:00 p.m. and 10:00 p.m. at exit 212 in Clanton, Alabama. Doc. 1 at 10. Price did not exit her vehicle during the traffic stop. Doc. 1 at 10. During the encounter, officers fired their weapons at Price a total of 17 times, striking her four times. Doc. 1 at 10–11. Price passed away at the scene. Doc. 1 at 11.

Plaintiff Jerry Chappell is the administrator and personal representative of Price's estate, and brought suit in that capacity on June 8, 2017, against Ezekiel; Jessica Mims and Jason Reeves, Chilton County deputy sheriffs; Chilton County and its sheriff, John Shearon; the City of Clanton and its chief of police, Keith Maddox; and fictitious defendants. Doc. 1 at 4. The crux of Chappell's complaint is that the officers used unreasonable and excessive force in violation of Price's Fourth Amendment rights, and that Chilton County, the City of Clanton, Shearon, and Maddox are liable for the constitutional deprivation on a supervisory basis. He also brings a state-law wrongful death

claim against all defendants. Mims and Reeves have answered the constitutional claims and moved to dismiss the wrongful death claim, while Ezekiel has answered all claims. *See* Docs. 34, 39 & 46. Shearon, Maddox, and the City of Clanton have moved to dismiss all claims and Chappell voluntarily dismissed his claims against Chilton County. *See* Docs. 26, 37, 51 & 56.

Chappell does not allege in the complaint the circumstances leading to the police chase or causing the officers at the scene to fire their weapons at Price. However, Chappell claims that afterwards the individual defendants "engaged or participated in, adopted, ratified, or condoned a deliberate campaign of false information to discredit Wendy Chappell Price in an attempt to justify the shooting and killing of Ms. Price." Doc. 1 at 11. This effort allegedly included the false statements that Price brandished weapons at the officers prior to the shooting, threatened the officers, fired at the officers, and exited her vehicle immediately prior to the shooting, "all of which were false and were made with the intention of misleading investigators, officials, and the public." Doc. 1 at 11.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint "requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual

allegations need not be detailed, but "must be enough to raise a right to relief above the

speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-

harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

Chappell's complaint is divided into three counts. Count I asserts a § 1983 claim

for excessive force in violation of the Fourth Amendment against Ezekiel, Mims, Reeves,

and fictitious defendants; Count II asserts a § 1983 claim for deliberate indifference and

supervisory liability against Chilton County, Shearon, the City of Clanton, Maddox, and

fictitious defendants; and Count III asserts a claim under Alabama's wrongful death statute

against all of the named defendants and fictitious defendants. *See generally* Doc. 1.

Chappell's claims are brought against the individual defendants in their official and

individual capacities. Doc. 1 at 2.

### A. Motion to Strike

Chappell brings claims against unnamed defendants who bear some connection to

his claims against the existing defendants. *See* Doc. 1 at 8–10. Chappell anticipates that

he will learn the unnamed defendants' "names and culpable actions or failures to act"

during discovery. Doc. 1 at 9.

"As a general matter, fictitious-party pleading is not permitted in federal court."

*Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A "limited exception" to the

general rule exists where "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Id.* (citation and internal quotation marks omitted). Chappell's description of the fictitious defendants here falls outside of this limited exception. Far from specific, Chappell essentially describes any person who may be subject to supervisory liability, who may have directly participated in the shooting itself, who may have failed to prevent the shooting, or who may have engaged in the later cover-up. Doc. 1 at 8–9. Chappell's claims against the fictitious defendants are impermissibly vague and not permitted under established standards of federal-court pleading. The motion to strike them from the complaint is due to be GRANTED.

## B.      Official-Capacity Claims

Chappell states claims against Shearon, Maddox, Mims, and Reeves in their individual and official capacities. However, "an official capacity suit is, in all respects other than name, to be treated as a suit against the [governmental entity for which the named individual serves]." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, Chappell's claims against Maddox in his official capacity are due to be dismissed because the City of Clanton is a named defendant in this action. *See, e.g.*, *Brown v. Neumann*, 188 F.3d 1289, 1290 n.1 (11th Cir. 1999) (suing a government officer in his official capacity is "duplicative and superfluous" where the agency for which he serves is also a defendant).

Furthermore, as Chappell has conceded, his claims against Shearon, Mims, and Reeves in their official capacities are barred for two reasons. First, the Eleventh Amendment to the United States Constitution prohibits suits for money damages against a state by citizens of that state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir.

1990). This immunity has been extended to suits against state officials in their official capacities where money damages would be paid by the state. *Id.* Thus, as Chappell has brought suit against Shearon, Mims, and Reeves in their official capacities for monetary damages, these claims are barred by the Eleventh Amendment.[1] Moreover, state officials acting in their official capacities are not "persons" subject to suit within the meaning of § 1983. *See Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 71 (1989). Accordingly, all of Chappell's official-capacity claims against Shearon, Maddox, Mims, and Reeves are subject to dismissal.

## C.    Claims Against Shearon, Maddox, and the City of Clanton

### 1.    Section 1983

Chappell seeks to hold Shearon, Maddox, and the City liable under § 1983 under three primary theories: (1) that they failed to develop an adequate policy regarding the use of force that would protect against an unconstitutionally unreasonable use of force; (2) that they failed to develop and implement adequate training to protect against unreasonable force; and (3) that they ratified the allegedly excessive force by making deliberately false statements in the aftermath of the incident or by failing to stop the dissemination of false information.[2]

---

[1] Eleventh Amendment immunity is subject to two limited exceptions: where the state has statutorily waived its immunity or Congress has limited the state's immunity. *See Carr*, 916 F.2d at 1524. Neither exception applies here, as Alabama has not waived its immunity and Congress has not abrogated Alabama's immunity in § 1983 cases. *See id.* at 1525.

[2] Maddox and the City of Clanton curiously assert that the court should accept the truth of Reeves' assertion that he was working as a Chilton County deputy sheriff during the incident in question, and dismiss them from the lawsuit on this basis. Maddox and the City have also submitted two declarations to that effect. *See* Doc. 48. Of course, the court cannot resolve factual determinations at the motion-to-dismiss stage and instead must accept Chappell's factual allegations in the complaint as true. *See Iqbal*, 556 U.S. at 678. And if it were to consider any matters outside the pleadings, the court must convert the motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 56. *Speaker v. U.S. Dep't of Health &*

Shearon and Maddox contend that they are entitled to qualified immunity in the face of Chappell's § 1983 claims. Docs. 26 at 13–14 & 45 at 8–12.  Qualified immunity shields government officials performing discretionary functions from suit "in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citation and internal quotation marks omitted).  Its purpose is to hold public officials accountable for legitimately unlawful conduct while shielding them from harassing lawsuits when they have acted reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to qualified immunity, a "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  If the public official has done so, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Dalrymple*, 334 F.3d at 995.  To satisfy this burden, the plaintiff must demonstrate that the defendant committed a violation of a constitutional right and that this right was "clearly established" at the time of the violation. *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016).

When a defendant raises qualified immunity on a Rule 12(b)(6) motion to dismiss, the court applies the familiar *Twombly/Iqbal* plausibility standard. *See, e.g.*, *Bowen v. Warden Baldwin St. Prison*, 826 F.3d 1312, 1319 (11th Cir. 2016); *Randall v. Scott*, 610

---

*Human Services Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  In the interest of efficiency and economy for both the court and the parties, the court declines to do so here, and therefore will not consider the declarations.  Maddox and the City may move for summary judgment on this basis at an appropriate time and with an appropriate factual record.

F.3d 701, 707–10 (11th Cir. 2010); *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (stating that the defendants are entitled to qualified immunity on a motion to dismiss if the complaint "fails to allege the violation of a clearly established constitutional right"). The court "begin[s] by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall*, 610 F.3d at 709–10. As it would on any other motion to dismiss, the court accepts the truth of well-pleaded factual allegations "and then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 710. There is no dispute that Shearon and Maddox were acting within the scope of their discretionary authority as the chief law enforcement officers in Chilton County and the City of Clanton, respectively, when performing any of the acts that would subject them to liability. Thus, the court must determine whether Chappell has plausibly alleged that Shearon and Maddox violated Price's clearly established Fourth Amendment rights.

### a. Unconstitutional Custom or Policy

As an initial matter, Chappell cannot assert a *respondeat superior* theory of liability under § 1983. *See, e.g.*, *Iqbal*, 556 U.S. at 676; *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Instead, liability under § 1983 will only stand where "the supervisor either directly participated in the unconstitutional conduct or . . . a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Chappell does not claim that Shearon

or Maddox directly participated in the shooting incident. Thus, he must allege facts demonstrating causation. *See, e.g.*, *Keith*, 749 F.3d at 1047–48.

"The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (citation and internal quotation marks omitted). In addition, a causal connection can be shown "when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citations and internal quotation marks omitted). The standard by which a supervisor is held liable in his individual capacity for the unconstitutional conduct of a subordinate is "extremely rigorous." *Id.* (citation and internal quotation marks omitted).

Against this rigorous standard, Chappell's complaint is rife with legal conclusions and fatally devoid of facts. While he recites the legal elements for a § 1983 deliberate indifference claim, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Chappell alleges that Shearon, Maddox, and the City failed to promulgate a policy regarding their officers' use of deadly force, which directly contributed to the officers' alleged use of excessive force. *E.g.*, Doc. 1 at 14. But while the absence of a policy may under some circumstances constitute a viable claim, *see Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), Chappell "cannot simply assert that there should be a policy; he must show that a custom exists." *Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1230 (N.D. Ala. 2014).

Chappell has not done so here.  He has provided no specific factual allegations suggesting the existence of a custom or policy leading to a deprivation of Price's Fourth Amendment rights.  Nor has he pointed to a history of widespread abuse in Chilton County or Clanton that would have put Shearon or Maddox on notice of the potential for such incidents.  In fact, Chappell has not pointed to a sinlge past instance of excessive force or any other constitutional deprivation by a member of the Chilton County Sheriff's Department or the Clanton Police Department.  And, finally, Chappell does not argue that Shearon, Maddox, or any other member of the Chilton County Sheriff's Department or Clanton Police Department either directed the officers to act unlawfully or knew that they would do so and neglected to stop them.  As a result, Chappell has not pleaded facts allowing the court to draw a reasonable inference that a causal connection exists between the conduct of Shearon or Maddox and the alleged constitutional deprivation. *Iqbal*, 676 U.S. at 678.  Instead, he has offered up—and tenuously at that—only the "possibility of misconduct." *Id.* at 679.

> **b.** **Inadequate Training**

Chappell also argues that Shearon, Maddox, and the City of Clanton should be held liable due to a failure to train the officers involved in the incident, implicating "a different, albeit very similar, rule: under § 1983, a supervisor can be held liable to failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference is a "stringent standard of fault," and exists only "when city policymakers are on actual or

constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). To establish actual or constructive notice, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Connick*, 563 U.S. at 62 (internal quotation marks omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined in [the Supreme Court's] prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389 (citation omitted).

Again, Chappell's factual allegations are insufficient to raise his "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Chappell perfunctorily states that each department's failure to train was a "deliberate choice" and constituted a "custom, practice, or policy of deliberate indifference." Doc. 1 at 14. But Chappell does not allege how Shearon and Maddox were deliberately indifferent or how they had actual or constructive notice that their training (or lack thereof) caused employees to violate citizens' constitutional rights by pointing to a past history of similar constitutional violations or some other glaring deficiency. While Chappell counters that he will provide the necessary factual predicate during discovery, Rule 8 of the Federal Rules of Civil Procedure does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 676 U.S. at 678–79. Indeed, "qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery." *Blinco v. Green Tree Serv., LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004).

Even so, Chappell is correct that the Supreme Court has "hypothesized" that "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63. Because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," the Supreme Court reasoned in *City of Canton*, and cities arm their officers with firearms "in part to allow them to accomplish this task[,] the need to train officers in constitutional limitations on the use of deadly force can be said to be 'so obvious' . . . that a failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10 (citation omitted). However, Chappell mischaracterizes the effect of this pronouncement on failure-to-train allegations relating to what has come to be known as "single-incident liability." Chappell asserts that he "is not required to show a historical pattern of prior constitutional violations to establish liability" wherever there is a use of deadly force. Doc. 50 at 10. However, the waters are significantly muddier than Chappell suggests and guidance in the application of the single-incident liability exception is scant, "as neither the Supreme Court nor Eleventh Circuit has ever applied it." *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1325 (S.D. Fla. 2015).

In *Whitaker*, a Florida district court was forced to apply the single-incident liability exception where the plaintiffs claimed that a Florida county acted with deliberate indifference to its citizens' civil rights by improperly training its police officers in the use of deadly force. *See id.* at 1323. The plaintiffs responded to the defendant's motion to dismiss by claiming that they identified the existence of a widespread practice of police officers using excessive force, but that the single-incident exception applied even without

this allegation. *See id.* The court explored the contours of the single-incident liability exception by examining a Fifth Circuit case affirming a jury verdict against a county based on the exception. *See id.* at 1325 (citing *Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000)). In *Brown*, the jury had concluded that the county had a policy of providing no training of any kind to its officers and reserve deputies. *Brown*, 219 F.3d at 455. The Fifth Circuit thus held that the "jury could have concluded that it was obvious to [the sheriff] that his policy decision not to train [its officers] would result in a constitutional deprivation." *Id.* at 363. However, as the *Whitaker* court noted, the Fifth Circuit limited the holding in *Brown* to its facts in subsequent cases. *See, e.g.*, *Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005) (distinguishing *Brown* where "there *was* training and [the plaintiffs did not show] that those training sessions were so deficient as to constitute deliberate indifference"). Moreover, *Brown* and the subsequent Fifth Circuit cases that limited its reach were summary-judgment cases, and "do not specifically speak to the burden of stating" a single-incident deliberate indifference claim. *Whitaker*, 126 F. Supp. 3d at 1327.

The *Whitaker* plaintiffs alleged that the county did not "adequately train its police officers to employ safe, reasonable and necessary techniques" to handle a variety of police-suspect encounters. *Id.* Like Price, the two decedents in *Whitaker* were fatally shot by police officers after a motor-vehicle pursuit. *See id.* at 1317. The court concluded that the complaint's allegations were "not well-pled facts, but rather conclusory allegations not entitled to the presumption of truth." *Id.* at 1327. Moreover, the plaintiffs' factual allegations did "not give rise to the reasonable inference that the deaths were a result of the

County's deliberate indifference to" the decedents' constitutional rights. *Id.* The complaint did not allege that a policymaker for the county made a conscious decision not to train its officers or that it was obvious that the failure to do so would result in a violation of citizens' constitutional rights. *Id.* Finally, the court distinguished *Brown*, pointing to the various facts proven in *Brown* that were not alleged in the *Whitaker* complaint. *See id.* at 1328.

Identically, Chappell has alleged no actual facts suggesting that there was an obvious but unmet need for training in either the Chilton County Sheriff's Department or the Clanton Police Department. Instead, Chappell relies purely on legal conclusions and § 1983 boilerplate language that is insufficient under the *Iqbal*/*Twombly* regime. Like the *Whitaker* plaintiffs, Chappell has done little, if anything, to tie the constitutional deprivation alleged in this case to a specific lack of training.[3] He does not plead any facts showing that Shearon and Maddox made the conscious decision not to train their officers in the face of an obvious need (despite his strategic and continuous use of the word "deliberately"), or that this failure to do so would obviously result in a constitutional violation. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions," and there must be enough factual matter pleaded "to raise a reasonable expectation that discovery will reveal evidence" of liability. *Twombly*, 550 U.S. at 555–56. Chappell has failed to plead any facts in support of his failure-to-train allegations, let alone enough facts sufficient to raise a reasonable expectation that discovery will reveal evidence that Shearon and Maddox failed entirely to

---

[3] Indeed, the fact that Chappell has asserted the same boilerplate allegations generically against Shearon, Maddox, and the City, with no differentiation or specificity, highlights Chappell's blanket approach to pleading.

train their officers on the use of deadly force and that this failure directly contributed to the constitutional deprivation Chappell has alleged.

### c.    Ratification

Finally, Chappell claims that Shearon, Maddox, and the other individual defendants knowingly made false statements in the wake of the incident in a deliberate campaign to discredit Price. *See, e.g.*, Doc. 1 at 11–12. Because these allegations are not grouped under any specific count in the complaint, it is unclear which—if any—claims these allegations support. Regardless, the dissemination of false information, without more, cannot support a cognizable supervisory liability claim under § 1983. Chappell cites to *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), and *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002), for the proposition that Shearon and Maddox acquiesced in, and therefore ratified, the officers' unconstitutional conduct by trying to cover it up. Neither so holds.

In *City of St. Louis*, the Supreme Court reaffirmed that, where a municipality's "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis*, 485 U.S. at 127. In *Matthews*, the Eleventh Circuit similarly held that liability on the basis of ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews*, 294 F.3d at 1297. Chappell, of course, has not pleaded facts that suggest Shearon and Maddox approved of the officers' conduct or the basis for it. Accordingly, any ratification theory of liability that had been asserted in

Chappell's § 1983 claims fails.

### 2.  *Wrongful Death*

Chappell brings a state-law wrongful death claim against the City and also against Shearon and Maddox in both their individual and official capacities.

### a.    **Shearon**

Shearon contends that he is entitled to absolute immunity under the Alabama Constitution from any state-law claims. Doc. 45 at 12–14.  Under Article I, Section 14 of the Alabama Constitution, "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14.  "Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14." *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).  Suits against sheriffs and their deputies in their individual capacities for "actions taken in the line and scope of their employment" constitute suits against the state, and are therefore prohibited by § 14. *Ex Parte Shelley*, 53 So. 3d 887, 895 (Ala. 2009).  "The wall of immunity erected by § 14 is nearly impregnable." *Ex parte Davis*, 930 So. 2d 497, 500 (Ala. 2005).

The Alabama Supreme Court has articulated five exceptions to § 14 immunity:

> Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act.

*Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987).  None of these exceptions applies in this case, as Chappell has sued purely for monetary damages outside of a boilerplate request

for any relief, "at law or in equity," to which he "may be entitled in the circumstances." Doc. 1 at 19.

Chappell contends that § 14 immunity does not apply where a sheriff acts "willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law," Doc. 50 at 18, but he has misunderstood the contours of immunity under Alabama law. In *Ex parte Moulton*, the Alabama Supreme Court restated the exception to state immunity Chappell invokes. The court concluded that § 14 immunity does not apply in "actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of the law, subject to the limitation that the action not be, in effect, one against the State." *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013). Yet, as already stated, suits against sheriffs and deputy sheriffs for actions taken in the line and scope of their employment are tantamount to suits against the state. *Davis*, 930 So. 2d at 500–01. There is no doubt that, with respect to any actions that Shearon may have taken which would subject him to liability, he was acting within the line and scope of his employment as the sheriff of Chilton County. Thus, this limited exception cannot save Chappell's claim against Shearon.

Alternatively, Chappell asserts that Alabama Code § 36-22-3[4] substantially

---

[4] Section 36-22-3 prescribes the duties of sheriffs in Alabama. Subsection (b) states:
> Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies, reserve deputies, and persons employed as authorized in Section 14-6-1 as determined appropriate by the sheriff in accordance with state law. Persons undertaking such duties for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law.

abrogates § 14 immunity. Doc. 50 at 18–20.  In essence, Chappell claims that Shearon

cannot claim a right to § 14 immunity because Chappell has alleged that Shearon did not

act in compliance with the law.  The court disagrees.  Section 14 "wholly withdraws from

the legislature, or any other state authority, the power to consent to an action against the

state." *Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987).  Chappell acknowledges that

he has found no authority for the proposition that § 36-22-3 has somehow abrogated

Alabama's constitutional immunity. *See* Doc. 50 at 19 ("Plaintiff's research has not

revealed a case . . . address[ing] the impact of the 2011 amendment to Ala. Code § 36-22-

2(b) [sic] on its previous application of state immunity.").  On the contrary, courts

interpreting § 14 immunity in the wake of the state legislature's 2011 amendment of

§ 26-22-3 routinely conclude that sheriffs and deputy sheriffs are immune from suits for

monetary damages. *See, e.g.*, *Holmes v. Hale*, 2017 WL 2804893, at *4 (11th Cir. June 28,

2017) (holding that, even where the plaintiff alleged that a deputy sheriff "acted with

extreme difference toward his wellbeing," the deputy was absolutely immune from all

state-law claims); *Scott v. City of Mobile*, 2017 WL 3262137, at *8 (S.D. Ala. July 5, 2017)

(same); *Bey v. Abrams*, 2017 WL 1407507, at *10 (N.D. Ala. Apr. 20, 2017) (same);

*Harrington v. City of Phenix City*, 2012 WL 204168, at *7 (M.D. Ala. Jan. 24, 2012) ("So

long as a sheriff or deputy sheriff acts within the scope of his or her employment, immunity

exists with respect to state-law claims, even for willful or malicious actions.").  Shearon is

thus immune from Chappell's state-law wrongful death claim, and this claim is due to be

---

Ala. Code § 36-22-3(b).  Section 36-22-3 was amended by the Alabama Legislature in June of 2011. *See Johnson v. Conner*, 720 F.3d 1311, 1314 n.3 (11th Cir. 2013).

dismissed.

### b.    Maddox

Chappell seeks to hold Maddox liable under Alabama's wrongful death statute under the same supervisory liability theories underpinning his § 1983 claims. However, Chappell's state-law claim against Maddox fails because Maddox is entitled to statutory discretionary-function immunity under Alabama Code § 6-5-338. That provision provides, in relevant part:

> Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state . . . shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a). "Whether a qualified peace officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) . . . ." *Hollis v. City of Brighton*, 885 So. 2d 135, 143 (Ala. 2004). The Alabama Supreme Court has explained:

> A State agent asserting State-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable.

*Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (citations and internal quotation marks omitted). The court in *Cranman* listed "exercising his or her judgment in the administration of a department or agency of government" as one example of conduct entitling an official to peace-officer immunity. *Cranman*, 792 So. 2d at 405. Of course, there is no doubt that, to the extent Maddox could be subjected to any liability, it would

arise out of the exercise of his judgment as the Chief of Police in Clanton. Thus, the burden shifts to Chappell to demonstrate that one of the exceptions articulated in *Cranman* applies.

The *Cranman* court provided two exceptions to discretionary-function immunity: (1) when state or federal law require otherwise, or (2) when the state official "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405. Chappell has not argued that either exception applies to Maddox. Indeed, Chappell's entire basis for Maddox's liability is his inadequate supervision of the officers under his command; Chappell does not allege that Maddox himself violated Price's constitutional rights. Accordingly, the court concludes that Maddox is entitled to discretionary-function immunity under § 6-5-338(a) and is immune from suit under Alabama law. *See, e.g.*, *Howard v. City of Atmore*, 887 So. 2d 201, 209–10 (Ala. 2003) (finding that immunity shielded a police chief from a plaintiff's "faulty training and supervision" wrongful death claim).

### c.       City of Clanton

Alabama municipalities are statutorily immune from intentional tort claims. *See* Ala. Code § 11-47-190; *Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010). Under § 11-47-190, municipal liability is limited "to injuries 'suffered through the neglect, carelessness, or unskillfulness of some agent.'" *Walker*, 62 So. 3d at 501 (quoting Ala. Code § 11-47-190). Because Chappell contends that Reeves acted deliberately, and not negligently or carelessly, any state-law claim against the City based on Reeves' conduct is due for dismissal, and only claims based on Maddox's alleged negligence bear further consideration. However, where a police officer is entitled to immunity under § 6-5-338(a),

"pursuant to § 6-5-338(b), the city by which he is employed is also immune." *Ex parte Dixon*, 55 So. 3d 1171, 1179 (Ala. 2010) (citations and internal quotation marks omitted); *see also Shaw v. City of Selma*, 2017 WL 1025677, at *19 (S.D. Ala. Mar. 15, 2017) (holding that where a police officer was entitled to peace-officer immunity, the city defendant was "likewise immune").  Accordingly, based on the court's findings above, Chappell's state-law claim against the City is due to be dismissed.

## D.     Claims against Mims and Reeves

Because the § 1983 official-capacity claims against Mims and Reeves are subject to dismissal and these defendants have answered the § 1983 individual-capacity claims, only the state-law wrongful death claim remains in dispute.  However, for the same reasons that Shearon is entitled to state immunity under the Alabama Constitution, so are Mims and Reeves. *See, e.g.*, *Holmes*, 2017 WL 2804893, at *4 ("[B]ecause a deputy sheriff's duties include making arrests, *see* Ala. Code § 15-10-1, [the defendant deputy sheriff's] actions were taken in the line and scope of his employment. . . . [and] [a]s a result, he is absolutely immune from [the plaintiff's] state law claims.").  Chappell has not argued that Mims and Reeves were not acting within the line and scope of their employment during the incident in question, and instead advances the same argument against immunity he asserted against Shearon. *See* Doc. 49 at 6–8.  In fact, Chappell explicitly alleges that Mims and Reeves were acting within the line and scope of their employment. *See* Doc. 1 at 5–6.  Accordingly, the court concludes that Mims and Reeves are entitled to § 14 immunity and Chappell's wrongful death claim against them should be dismissed.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1.      The City of Clanton and Maddox's Motion to Dismiss (Doc. 26) is GRANTED, and all claims against the City of Clanton and against Maddox in both his individual and official capacities are DISMISSED with prejudice.

2.      Shearon's Motion to Dismiss (Doc. 37) is GRANTED, and all claims against him in both his individual and official capacities are DISMISSED with prejudice.

3.      Mims and Reeves' Partial Motion to Dismiss (Doc. 38) is GRANTED, and Chappell's state-law wrongful death claim against them is DISMISSED with prejudice.

4.      The City of Clanton and Maddox's Motion to Strike Fictitious Parties (Doc. 27) is GRANTED, and all claims asserted against fictitious parties are DISMISSED with prejudice.

DONE this 14th day of September, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE